## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **STEVEN LISS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **Case No. 3:19-cv-00810-GCS** |
| **TMS INTERNATIONAL, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

| | |
|---|---|
| **TMS INTERNATIONAL, LLC,** | ) |
| | ) |
| **Third-Party Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | ) |
| **SUPREME TRUCKING &** | ) |
| **EXCAVATING, LLC, and UNITED** | ) |
| **SCRAP METAL, INC.** | ) |
| | ) |
| **Third-Party Defendants.** | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Stephen Liss filed suit against Defendant TMS International, LLC ("TMS") on July 25, 2019. (Doc. 1). In his complaint, Plaintiff alleges that his employer, Third-Party Defendant Supreme Trucking & Excavating, LLC ("Supreme") directed him to deliver scrap metal from Third-Party Defendant United Scrap Metal, Inc.[1] ("USM") to TMS. (Doc. 22, p. 2). However, when Plaintiff arrived at TMS, its property was flooded. *Id.* When crossing the flooded portion of the property, Plaintiff turned his right ankle and fell to

---

[1]    USM is the general contractor responsible for hiring Supreme.

the ground due to uneven terrain concealed by the water. *Id*. at p. 3. Plaintiff therefore brings one count for common law negligence against TMS due to the unsafe conditions on its property. *See generally, id.*

On March 10, 2020, TMS filed a third-party complaint against USM and Supreme for contribution, should TMS be found liable for Plaintiff's injuries. (Doc. 45). TMS alleges that Supreme negligently failed to supervise Plaintiff's delivery and failed to train Plaintiff regarding the use of proper safety gear and the appropriate protocol to follow when a delivery facility is closed. *Id*. at p. 3. Against USM, TMS brings one count for negligently hiring Supreme. *Id*. at p. 4. Now before the Court is TMS's motion for summary judgment against Plaintiff. (Doc. 116). For the reasons delineated below, Defendant TMS's motion for summary judgment is **DENIED.**

## FACTUAL BACKGROUND

Prior to his injuries, Supreme employed Plaintiff as a truck driver for approximately eight years. (Doc. 117, p. 2). In this position, Plaintiff regularly transported scrap metal from one facility to another using a truck Supreme owned. *Id*. at p. 2-3. On February 7, 2019, Plaintiff picked up a load from a USM facility and drove it to a TMS facility in Granite City, Illinois. *Id*. Typically, when arriving at an unloading site, a driver would drive the truck onto the scale at the destination facility to weigh the scrap metal load. (Doc. 117, p. 4). However, when Plaintiff arrived at the facility on February 7th, heavy rain had flooded portions of the property, including the portion where Plaintiff would usually drive onto the scale. (Doc. 136, p. 12). A cone in front of the scale indicated

to Plaintiff that he was prohibited from further driving onto the scale per custom in the industry. (Doc. 118, p. 2). He therefore exited his truck and walked to TMS's office to see if he could unload his shipment at the facility. *Id.* Plaintiff did not call Supreme, USM, or TMS for instructions prior to exiting his vehicle. (Doc. 136, p. 12).

Plaintiff kept a hardhat in the cab of his truck. (Doc. 117, p. 9). He also admits that he saw a sign at the TMS facility stating that hard hats were required at all times. However, Plaintiff did not wear his hard hat when he exited his vehicle. *Id.* After exiting his vehicle, Plaintiff approached the TMS office by walking under a catwalk structure, so as to avoid the deepest part of the floodwater. (Doc. 136, p. 12). Water under the catwalk also forced Plaintiff to walk closer to the building and under the diagonal supports of the catwalk structure. *Id.* at p. 13. Three signs on the catwalk warned visitors of potential dangers: (i) a large white and red sign which read "WARNING, CLOSE CLEARANCE: Will Not Clear Man on Side of Car;" (ii) a large white and black sign which read "PLEASE Drive Slowly when Leaving Scale; SPEED LIMIT 5 mph;" and (iii) a small yellow sign with black lettering.[2] *Id.* An orange sign with white lettering and a white notice sign are also located near the catwalk. (Doc. 117, Exh. 15). Plaintiff could have alternatively

---

[2]      Both Defendant TMS and Plaintiff include photos of the three warning signs at the location of Plaintiff's injury. (Doc. 136, p. 13; Doc. 159, p. 3). Both parties also refer to "warning signs" posted near the catwalk. (Doc. 136, p. 13; Doc. 117, p. 7). However, the parties differ as to which signs, exactly, are the "warning signs" at issue. Plaintiff refers to an orange and blue sign on the catwalk as the only signs Plaintiff could see. (Doc. 136, p. 4)(referencing Doc. 117, Exh. 15). Defendant TMS does not specify which signs are the "warning signs." (Doc. 117, p. 7; Doc. 159). Neither party specifies the content of the signs, and the pictures of the yellow sign, the orange sign, and the white notice sign are too small to make out the text clearly. Defendant TMS bears the burden of resolving factual disputes as to the content of these signs. *See Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

accessed the office by walking around the building, through the parking lot, to the door on the opposite side. (Doc. 118, p. 2). This path would not have required walking under the catwalk structure. *Id.*

Plaintiff is six feet and three inches tall; the horizontal iron crossbar of the catwalk structure is approximately five feet higher than the ground. (Doc. 136, p. 14). Plaintiff was therefore forced to "duck" under the bar when going to and leaving from TMS's office to his truck. *Id.* TMS's corporate deponent noted that he and other TMS employees use the same pathway to access the TMS office. *Id.*

When Plaintiff entered the office, he asked TMS employees whether he could unload his scrap metal; the employees told him he could not. (Doc. 136, p. 16). Plaintiff then returned to his truck using the same path by which he accessed the office. *Id.* This time, according to Plaintiff, Plaintiff twisted his foot on uneven ground under the floodwater and severely injured his leg. *Id.* at p. 17. He also struck his head on the catwalk support bars. (Doc. 118, p. 3). Although Plaintiff testified that he believes he caught his foot in a hole, no hole was present on the site. *Id.* However, the site does contain welded plates, which were hidden from view under the floodwater. (Doc. 136, p. 17). These plates are smooth and interconnecting. (Doc. 159, p. 5). In contrast, during the hearing on the parties' motions for summary judgment, TMS stated that its expert, Dr. Angela Levitan-DiDomenico, believed that Plaintiff first hit his head on the catwalk, which then caused him to fall on to his leg. Plaintiff requests compensation for his leg injuries only. (Doc. 136, p. 17).

## LEGAL STANDARDS

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c); *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)(citing *Celotex*, 477 U.S. at 323). This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Regensburger v. China Adoption Consultants*, *Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). *See also Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009)(stating that "we are not required to draw every conceivable inference from the record . . . we draw only reasonable inferences") (internal citations omitted). Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While the Court may not "weigh evidence or engage in fact-finding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *See Walker v. Shansky*, 28 F.3d 666, 670–671 (7th Cir. 1994), aff'd, 51 F.3d 276 (citing *Celotex*,

477 U.S. at 324). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted). *Accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994). In other words, "inferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009) (internal citation omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]"). Instead, the non-moving party must present "definite, competent evidence to rebut the [summary judgment] motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (internal citation omitted).

## ANALYSIS

A Court sitting in diversity jurisdiction applies the substantive law of the state in which it resides. *See Maroules v. Jumbo, Inc.*, 452 F.3d 639, 645 (7th Cir. 2006). Duty and liability are distinct concepts under Illinois law; both concepts must be considered separately. *See Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011). Unless the defendant owes the plaintiff a duty of reasonable care, the defendant cannot be liable for the plaintiff's injury. *See Bell v. Hutsell*, 955 N.E.2d 1099, 1104 (Ill. 2011). Establishing such a duty requires the plaintiff to demonstrate that the plaintiff and the defendant stood in

relation to one another such that the law imposes on the defendant an obligation of reasonable conduct for the benefit of the plaintiff. *See Vancura v. Katris*, 939 N.E.2d 328, 347 (Ill. 2010). This inquiry involves considering four factors: (i) the reasonable foreseeability of the injury, (ii) the likelihood of the injury, (iii) the magnitude of the burden of guarding against the injury, and (iv) the consequences of placing that burden on the defendant. *See Swearingen v. Momentive Specialty Chemicals, Inc.*, 662 F.3d 969, 972 (7th Cir. 2011)(citing *Vancura*, 939 N.E.2d at 347). If the Court determines that a duty exists, the plaintiff must next demonstrate that the defendant breached that duty and that this breach proximately caused the plaintiff's injury. *See Thompson*, 948 N.E.2d at 45.

Plaintiff alleges that Defendant TMS was negligent in its duty of exercising reasonable care to ensure that its premises were safe for business invitees' use. Under Illinois law, landowners owe business invitees a duty of care to ensure their premises are safe for the invitees' use. *See Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1063 (Ill. 2006). In its motion for summary judgment, Defendant TMS alleges that it did not owe a duty of care to Plaintiff because the risk the flood water posed on its premises was "open and obvious", *i.e.*, Defendant TMS should not have anticipated that business invitees on its premises would fail to discover the unsafe condition or to protect themselves. (Doc. 118, p. 6). Defendant TMS also asserts that Plaintiff offers only speculation as to the proximate cause of his injury, thus justifying summary judgment. *Id.* at p. 8.

I.      **Whether the Risk to Plaintiff due to Defendant TMS's Flooded Property was Open and Obvious.**

Under Illinois law, the "open and obvious doctrine" is an exception to a landowner's general duty of care to invitees. *Park v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 960 N.E.2d 764, 769 (Ill. App. Ct. 2011). Those who own, occupy, control, or otherwise maintain a premises are not "ordinarily required to foresee and protect against injuries" from dangerous conditions which are open and obvious. *Bucheleres v. Chicago Park Dist.*, 665 N.E.2d 826, 832 (Ill. 1996).[3] When a condition is so "blatantly obvious," a defendant cannot be reasonably expected to anticipate that invitees will fail to protect themselves from the condition. *Ward v. K Mart Corporation*, 554 N.E.2d 223, 230 (Ill. 1990). In cases involving such conditions, the law presumes that those who encounter them will take care to avoid any danger inherent to the condition. *Id.* "The open and obvious nature of the condition itself gives caution and therefore the risk of harm is considered slight; people are expected to appreciate and avoid obvious risks." *Id.*

Whether a dangerous condition is open and obvious often presents a question of fact. *See Bruns v. City of Centralia*, 21 N.E.3d 684, 690 (Ill. 2014). However, when there is no dispute as to the "physical nature" of the condition, whether the condition is open and obvious is a question of law. *Id.* A risk is "obvious" when a reasonable person exercising ordinary perception, intelligence, and judgment would recognize the condition and its inherent risk. *Id.* (citing Restatement (Second) of Torts § 343A, cmt. B, at 219 (1965)). The

---

[3]      The open and obvious doctrine is also outlined in Restatement (Second) of Torts § 343A. The Illinois Supreme Court adopted this doctrine as part of Illinois common law in *Bucheleres*. 665 N.E.2d at 831.

determination of whether a condition is open and obvious therefore depends on the objective knowledge of a reasonable person confronted with the same condition, rather than the plaintiff's subjective knowledge. *See Racky v. Belfor USA Grp., Inc.*, 83 N.E.3d 440, 467 (Ill. App. Ct. 2017). If "a reasonable person with the plaintiff's knowledge of the situation would have appreciated and avoided a hazard created by the defendant's actions, then from the defendant's perspective, the plaintiff's injuries were neither foreseeable nor likely." *Smith v. MHI Injection Molding Mach., Inc.*, No. 10 C 8276, 2014 WL 1516592, at *5 (N.D. Ill. Apr. 18, 2014). It is therefore necessary that a reasonable person be able to perceive *both* the condition itself and the risk associated with the condition. *See Dunn v. Menard, Inc.*, 880 F.3d 899, 908 (7th Cir. 2018) (internal citations omitted).

As an initial matter, Plaintiff contends that the open and obvious doctrine is inapplicable in pure negligence cases. Although Plaintiff outlines a hazard on Defendant TMS's property; namely, potentially uneven ground beneath a body of floodwater and a catwalk, Plaintiff's complaint is premised on Defendant TMS's alleged negligence in failing to fully shut down its premises on the day of the incident or otherwise protect against or warn against potential hazards from flooding. Premises liability and traditional negligence offer two distinct theories of duty and liability under Illinois law. Plaintiffs in a premises liability case allege a particular and specific negligence cause of action, in which they must show: (i) the existence of a condition which presents an unreasonable risk of harm to persons on the premises; (ii) the defendants knew or should have known that the condition posed such a risk; (iii) the defendants should have

anticipated that individuals on the premises would either fail to discover the danger or fail to protect themselves against it; (iv) the defendant made a negligent act or omission; (v) the plaintiff suffered an injury; and (vi) the condition proximately caused that injury. *See Fowler v. United States*, No. 08 C 02785, 2014 WL 683751, at *8 (N.D. Ill. Feb. 21, 2014) (internal citations omitted). In contrast, traditional negligence cases require a plaintiff to demonstrate only the four negligence factors referenced above and cited by the Illinois Supreme Court in *Vancura*. *See Vancura*, 939 N.E.2d at 347. Although a premises liability case requires a plaintiff to demonstrate additional factors, both traditional negligence cases and premises liability cases share the requirement that the plaintiff demonstrate the foreseeability of the injury in prongs (ii) and (iii) of a premises liability case, and prong (i) of a negligence case. The factors for both types of cases also require that a plaintiff demonstrate the likelihood of a potential injury, as mentioned explicitly in prong (ii) of the negligence factors and described by the defendants' burden to anticipate that individuals on the premises would fail to discover or protect against a danger in prong (iii) of the premises liability factors.

Plaintiff contends that Illinois appellate courts have outlined that the open and obvious doctrine does not apply to negligence cases. However, it appears that the question of whether the open and obvious doctrine applies to negligence cases is actually unsettled among Illinois courts: appellate courts are split as to whether, and under what circumstances, the doctrine may apply. *Compare Petrouski v. Brandenburg Indus. Service Co.*, No 1-11-0500, 2012 WL 2402634, at *10 (Ill. App. Ct. Mar. 22, 2012)(finding that the

open and obvious doctrine is inapplicable in negligence suits)(citing *Chu v. Bowers*, 656 N.E.2d 436, 440 (Ill. App. Ct. 1995)) *with Kun Mook Lee v. Young Rok Lee*, 149 N.E.3d 551, 556 (Ill. App. Ct. 2019)(stating that a plaintiff who alleged that the open and obvious doctrine was only applicable in premises liability cases was "incorrect"). The Illinois Supreme Court has not explicitly opined on this issue; however, it has applied the open and obvious doctrine to negligence cases, without regard to whether the case was also a premises liability case. *See, e.g., Kun Mook Lee*, 149 N.E.3d at 556 (citing *Bruns v. City of Centralia*, 21 N.E.3d 684, 690-691 (Ill. 2014)). As the Illinois Supreme Court has had no qualms about applying the open and obvious doctrine to negligence cases, and as the underlying rationale for applying the doctrine to negligence cases is persuasive, the Court predicts that the Illinois Supreme Court would answer the question of whether the open and obvious doctrine applies in cases such as this in the affirmative.

First, the Illinois Supreme Court has consistently applied the open and obvious doctrine to negligence cases. For example, in *Ward v. K-Mart Corp.*, the Court began by outlining the traditional negligence standard under which the plaintiff was proceeding. *See Ward*, 554 N.E.2d at 226-227. It then explained that the defendant's duty of reasonable care extended to all risks that the plaintiff might encounter on the property. *Id.* at 229. In resolving the question of the extent of the defendant's duty, the Court turned to Restatement (Second) of Torts, § 343A, Illustration 4, in which the hypothetical defendant did not exercise reasonable care to move a fallen rainspout out of the way of business invitees – even though this example is in a section of the Restatement describing premises

liability. *Id*. at 234. The Illinois Supreme Court's analysis of this case demonstrates the sometimes blurred lines between premises liability and negligence under Illinois law, and by applying the open and obvious doctrine, the Court suggests that the doctrine is applicable in negligence cases.

Furthermore, the logic underlying the applicability of the open and obvious doctrine to negligence cases is equally applicable in this case. When Illinois appellate courts apply the doctrine to negligence cases, those courts have clarified that the doctrine defines the scope of prong (i) and prong (ii) of the negligence factors, *i.e.*, the foreseeability and likelihood of injury. *See, e.g.*, *Kun Mook Lee,* 149 N.E.3d at 558-559 (holding that the plaintiff ignoring the open and obvious risk of tying two ladders together and placing that ladder on a branch that was to be cut down constituted "freakish" circumstances for which the defendant should not be liable). *Cf. Passarella v. NFI Interactive Logistics, LLC,* Case No. 12 C 4147, 2015 WL 4148674, at *7 (N.D. Ill. Jul. 9, 2015)(noting that the law "considers the likelihood of injury is slight when the condition in issue is open and obvious[.]")(quoting *Sollami v. Eaton*, 772 N.E.2d 215, 224 (Ill. 2002)).[4] These factors are also vital to premises liability claims; thus, logically, the open and obvious defense would apply to  both negligence and premises liability cases. Regardless of whether a plaintiff proceeds on a premises liability theory or a traditional negligence theory, the

---

[4]      In footnote 6, the *Passarella* Court noted that the open and obvious doctrine *does not* apply to negligence cases. *See* 2015 WL 4148674, at *8 n.6 (emphasis added). However, in outlining the contours of the doctrine, the *Passarella* court cites to *Bruns*, 21 N.E.3d at 690, a case in which the Illinois Supreme Court applied the open and obvious doctrine to a suit in which the plaintiff proceeded on a theory of negligence. Equally, the other case to which the *Passarella* Court cites to define the doctrine, *Sollami*, 772 N.E.2d at 224, applies the doctrine to a premises liability suit, but does not foreclose the possibility of applying the doctrine to negligence cases.

foreseeability of that plaintiff disregarding an open and obvious risk is necessarily low, minimizing essential factors in both a negligence *and* a premises liability analysis.

Finally, the cases to which Plaintiff relies to support the proposition that the open and obvious doctrine does not apply to negligence cases are inapposite. For instance, Plaintiff first cites to *Smart v. City of Chicago*, 43 N.E.3d 532, 544 (Ill. App. Ct. 2013), overruled in part and on other grounds by *Stanphill v. Ortberg*, 129 N.E.3d 1167 (Ill. 2018). In *Smart*, the Court found that the open and obvious doctrine was not an appropriate issue before a jury because the "City [did] not explain how a jury could have found that the hazardous conditions of the intersection were open and obvious when the City's only witness testified that the street was perfectly level . . . ." *Id.* at 545. *Smart* does not stand for the proposition that the doctrine does not apply to negligence cases. Instead, the court merely held that the doctrine was not applicable under the facts of that case. *See also Kun Mook Lee*, 149 N.E.3d at 556 (arriving at the same conclusion after analyzing *Smart*).

Equally, Plaintiff cited to *Passarella* to demonstrate that courts have previously found that the open and obvious doctrine bars a premises liability claim but does not prevent a negligence claim from moving forward on summary judgment. *See also* (Doc. 175, p. 2). However, in that case, the Court did not consider both the premises liability and negligence counts of the plaintiff's complaint. Instead, it noted that the defendants failed to address the plaintiff's negligence claim, giving the appellate court a distinct reason to find that the negligence claim could survive summary judgment. *See Passarella*,

2015 WL 4148674, at *7. Accordingly, *Passarella* cannot support limiting the application of the open and obvious doctrine to premises liability claims only.[5]

Plaintiff next cites to *Chu*. In that case, the Court noted that Illinois courts have applied the open and obvious doctrine to "bar recovery by children under the age of seven." *Chu*, 656 N.E.2d at 440 (internal citations omitted). The Court then summarily stated that "***this rule*** applies only in premises liability cases." *Id.* (citing *Kahn v. James Burton Co.*, 126 N.E.2d 836 (Ill. 1955); *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 641 N.E.2d 1228 (Ill. 1994), rev'd and rem'd, 660 N.E.2d 883 (Ill. 1995); Restatement (Second) of Torts § 339)(emphasis added). However, each of the cases and the section of the Restatement to which the *Chu* Court cites concern whether a possessor of land is subject to liability for physical harm to children trespassing on the land. *See* Restatement (Second) of Torts § 339. They do not address the application of the open and obvious doctrine. A common-sense reading of *Chu* and its citations simply reveals that that court believed rules outlining the duty to exercise reasonable care based upon the age of the plaintiff apply only to premises liability actions. *See, e.g.*, *Mt. Zion*, 641 N.E.2d at 1231 (explaining that the open and obvious doctrine outlines the scope of foreseeable injury and holding that the doctrine does not apply to children under seven);

<hr>

[5] Plaintiff first raised the question of the applicability of the open and obvious doctrine to this case in his motion *in limine*. (Doc. 175). In that motion, Plaintiff also argues that the open and obvious doctrine is inapplicable because Defendant TMS's alleged OSHA violations constitute *prima facie* evidence of negligence. *Id.* at p. 3. Although Plaintiff discusses the alleged OSHA violations in the context of describing the appropriate standard of care under which Defendant TMS bore its obligations toward Plaintiff, he does not explicitly argue that a violation of OSHA constitutes *prima facie* evidence of negligence, and Defendant TMS has therefore not had an opportunity to address that argument. Accordingly, the Court does not consider that issue, and its impact on the application of the open and obvious doctrine at trial, at this time.

*Kahn*, 126 N.E.2d at 841 (considering whether a lumber yard was likely to attract children who might be injured, but not considering the open and obvious doctrine at all); Restatement (Second) of Torts §339 (describing the responsibility of landowners for hazards on their land which may attract children).

Indeed, even if the term "this rule" did refer to the open and obvious doctrine, the Illinois Supreme Court's later reversal of *Mt. Zion* indicates that this statement is not accurate. As the Illinois Supreme Court explained when considering the interrelation between the open and obvious doctrine and the attractive nuisance doctrine on review of the appellate court's decision in *Mt. Zion,* the "rationale for the 'no duty' rule is [] because children, like adults, are expected to avoid dangers which are obvious . . . ." *Mt. Zion,* 660 N.E.2d at 868-869. There is therefore no reasonably foreseeable risk of harm in negligence cases in which dangers are obvious. *Id.* Accordingly, even if the *Chu* Court *was* referring to the application of the open and obvious doctrine when it said that "this rule" did not apply in negligence cases, the Illinois Supreme Court has since strongly indicated that this is not an accurate summation of Illinois law.

Some Illinois appellate courts, however, have summarily cited to *Chu* to foreclose the possibility of applying the doctrine in negligence cases. *See Passarella*, 2015 WL 4148674, at *8 n.6; *Petrouski*, 2012 WL 2402634, at *10. As these cases misapply the statement in *Chu* that "this rule applies only in premises liability" suits, the Court finds the conclusory statements therein unpersuasive in this case.

After establishing that Plaintiff's negligence count does not foreclose the application of the open and obvious doctrine, the Court next turns to whether the doctrine is a question of law or fact in this case. Defendant TMS asserts that the flooding over the restricted area in which Plaintiff was injured was an open and obvious condition. (Doc. 118, p. 6). Plaintiff testified during his deposition that he observed a "lot of water" when he arrived at the premises, and photos of the road leading to TMS show significant flooding on the property. (Doc. 117, Exh. 7, 26:9-11; Doc. 117, p. 7). Plaintiff also observed warning signs and flood water next to the closed scales. (Doc. 118, p. 7). Defendant TMS argues that these conditions made the risk of flooding immediately obvious to a reasonable visitor. *Id.* at p. 6. Defendant TMS further asserts that Plaintiff specifically knew of the condition because he traversed the water in order to access the TMS office. *Id*. He should therefore have appreciated the condition and its risk when returning to his truck. *Id*.

Defendant TMS additionally asserts that the area under the catwalk structure in which Plaintiff was injured also constituted an open and obvious risk to Plaintiff. (Doc. 118, p. 6). Plaintiff admits that he observed warning signs attached to the catwalk structure. (Doc. 117, p. 9-10). The structure also contained two bars which were significantly shorter than the Plaintiff. (Doc. 118, p. 6). Nevertheless, as Defendant TMS argues, Plaintiff chose to walk underneath the structure without his hard hat, despite his understanding of the risk involved in doing so. *Id*. at p. 6-7.

Plaintiff responds that the dangerous condition of the premises was not the water itself, nor the catwalk above the water, but the uneven ground the water obscured. (Doc. 136, p. 25). This contention is supported not only by Plaintiff's testimony, but also by exhibits which showed that the Plaintiff could not see the metal plates or uneven elevations beneath the flood water. *Id*. at p. 26. Accordingly, Plaintiff contends that the question of visibility beneath the water is one properly before a jury. *Id*. at p. 25.

Open bodies of water are paradigmatic examples of open and obvious conditions. *See Bucheleres*, 665 N.E.2d at 836. However, cases addressing the open and obvious danger of water are premised on the notion that such conditions pose two specific types of risk: (i) the risk of drowning, and (ii) the risk of injury from diving into water that is too shallow. *See Jackson v. TLC Associates, Inc.*, 706 N.E.2d 460, 464 (Ill. 1998). The risks inherent to watery premises do not include the presence of submerged hazards when those hazards are variable and cannot otherwise be detected. *Id*. For example, in *Jackson*, the plaintiff swam in a man-made lake with a murky appearance and hit his head on a submerged pipe. *Id*. at 461. The Illinois Supreme Court concluded that the open and obvious doctrine did not extend to this hidden hazard. "The existence of the hazard had nothing to do with the inherent characteristics of bodies of water; it stemmed solely from [the defendant's] conduct." *Id*. at 464. As in *Jackson*, here, Plaintiff alleges that he twisted his foot on uneven ground conditions or on metal plates that the flood water on Defendant TMS's property obscured. (Doc. 136, p. 25). This hazard is simply not inherent to a body of water. As Plaintiff has successfully introduced doubt as to the character of

the condition which Defendant TMS claims is open and obvious, the question of whether the exception applies to absolve Defendant TMS of the duty to prevent access to the condition remains properly before the jury.

Defendant TMS also argues that the catwalk structure on which Plaintiff injured his head presents an open and obvious risk which would otherwise deter rational visitors from taking the same path as Plaintiff. (Doc. 118, p. 7). The catwalk contained two iron bars which are significantly shorter than Plaintiff, thereby posing an obvious risk to those attempting to duck under them. *Id*. at p. 6. Defendant TMS points out that Plaintiff nevertheless took this route without his mandated hard hat. *Id*. The risk associated with the catwalk is of bumping one's head. A reasonable person could protect against this identified risk by ducking lower to avoid the bars of the catwalk. Though Plaintiff attempted to do this, he asserts that uneven ground or metal slates caused him to trip. The risk of which Plaintiff complains is therefore not associated with the catwalk itself, but with the ground beneath the catwalk, which was obscured from Plaintiff's view. As the Court must view the evidence in the light most favorable to Plaintiff at this stage, and as the parties maintain a genuine dispute as to the cause of Plaintiff's injury, summary judgment is not appropriate on this question. A reasonable jury could find that this risk is not open and obvious.

## II.   Whether Plaintiff's Evidence as to Proximate Causation Rises above Mere Speculation.

Defendant TMS next asserts that Plaintiff must offer evidence from which a reasonable jury could conclude that it's actions proximately caused Plaintiff's injury.

(Doc. 118, p. 9). Because Plaintiff has failed to do so, Defendant TMS argues that summary judgment in its favor is proper. *Id.* A plaintiff bears the burden to "affirmatively and positively show" that the defendant's negligence caused the injuries for which that plaintiff seeks to recover. *Bermudez v. Martinez Trucking*, 796 N.E.2d 1074, 1079 (Ill. App. Ct. 2003) (internal quotations omitted). This showing requires "a reasonable certainty" that the defendant caused the plaintiff's injury. *See DeJohn v. Dollar Tree Stores, Inc.,* No. 18-cv-00079, 2021 WL 767618, at *4 (N.D. Ill. Feb. 26, 2021) (internal citations omitted). Accordingly, a plaintiff must predicate his or her claim on more than mere speculation, surmise, or conjecture in order to survive summary judgment. *Id.* Though a plaintiff may prove his or her case by circumstantial evidence, this evidence must nevertheless support finding that proximate causation is *probable*, rather than merely possible. *See Berke v. Manilow*, 63 N.E.3d 194, 204 (Ill. App. Ct. 2016) (emphasis added). If a plaintiff fails to establish the element of proximate causation, that plaintiff has not sustained his or her burden of making a *prima facie* case of negligence and summary judgment is proper. *See id.* (citing *Mann v. Producer's Chemical Co.*, 827 N.E.2d 883, 887 (Ill. App. Ct. 2005)).

Although a plaintiff's burden as to proximate causation requires some evidentiary support in order for that plaintiff to survive summary judgment, a plaintiff is not foreclosed from establishing summary judgment merely because the plaintiff relied on circumstantial evidence. *See Berke*, 63 N.E.3d at 204 (internal citations omitted). The proper standard for evaluating proximate causation is "reasonable certainty;" in other words, the plaintiff's estimation of proximate causation will only be deemed speculative

if the existence of the facts alleged are less likely, or equally likely, as the non-existence of those facts. *Id.* Accordingly, if the facts and circumstances of a case reasonably suggest that a defendant's negligence "operated to produce the injury," in light of ordinary experience, then the plaintiff has sufficiently demonstrated proximate causation. *Id.* It is not necessary that the plaintiff's conclusion is the only possible conclusion to be drawn from the presented evidence. *Id.* To the contrary, if the evidence is conflicting, the Court must leave the resolution of the discrepancy to the trier of fact. *See, e.g.*, *Mann v. Producer's Chemical Co.*, 827 N.E.2d 883, 892 (Ill. App. Ct. 2005)(listing cases). For example, if a plaintiff offers witness testimony or other evidence supporting the plaintiff's accounting of the proximate cause of the injury, while the defendant offers alternative possibilities to that accounting, the Court will find that the plaintiff has carried the required burden. *See Petrouski*, 2012 WL 2402634, at *6.[6] "Merely because there were other possibilities as to the [proximate cause of the Plaintiff's injury] does not entitle [the defendant] to a verdict in its favor; it is quintessentially the province of the jury to resolve conflicting testimony and come to a conclusion." *Id.* (citing *Maple v. Gustafson*, 603 N.E.2d 508, 513 (Ill. 1992)).

Proximate cause consists of two requirements: cause-in-fact and legal cause. *See Abrams v. City of Chicago*, 811 N.E.2d 670, 674 (Ill. 2004). Cause-in-fact requires that the defendant's conduct is a "material element and substantial factor in bringing about the injury." *Id.* In contrast, finding legal cause requires evaluating foreseeability. *Id.*

---

[6]      *Petrouski* is an unpublished decision, which carries only persuasive value. Nevertheless, the Court finds the example outlined in *Petrouski* illustrative.

Defendant TMS argues that Plaintiff cannot establish its burden with regards to cause-in-fact because Plaintiff offers no evidence of the uneven ground conditions or uneven metal slates he alleges caused his injury. (Doc. 118, p. 6).

Cause-in-fact is an especially difficult evaluation when the plaintiff alleges that a natural condition is at fault for the injuries. Illinois courts recognize that it is "unrealistic" to expect premises owners to keep all areas in which visitors may walk clear from all weather-related hazards during the months associated with them, such as from ice and snow during the winter. *See Allen v. Cam Girls, LLC*, 98 N.E. 3d 474, 476 (Ill. App. Ct. 2017) (internal citations omitted). Property owners, however, are not immune to claims arising from natural conditions in which man-made conditions contribute to the natural conditions. *See McClean v. Rockford County Club*, 816 N.E.2d 403, 410 (Ill. App. Ct. 2004). Nevertheless, a plaintiff must still demonstrate a causal link between the man-made conditions and the risk posed by the natural conditions. Because cause-in-fact requires a plaintiff to demonstrate a causal relationship between the defendant's negligence and the plaintiff's injuries, the plaintiff must show that the injuries are the result of an "unnatural" accumulation of the hazard with evidence sufficient to support an inference that this hazard caused the plaintiff's injuries. *Id.* (internal citations omitted).

Plaintiff provides affirmative evidence that man-made conditions on Defendant TMS's premises contributed to the floodwater at the location at which Plaintiff was injured. Jeffery Smith, the master mechanic for Defendant TMS, testified at his deposition that the rails preceding and at the weigh station build a "funnel" that pushes water

towards the scales and TMS's office. (Doc. 136, Exh. 1, 14:10-24). This "funnel" would support a reasonable jury in finding that the conditions on TMS's property were man-made.

Likewise, Plaintiff himself provides testimony offering a reasonable theory of the proximate cause of his injury. During his deposition, when asked whether he knew what caused his foot to twist, Plaintiff stated: "I'm going to say the uneven ground under the water." (Doc. 117, Exh. 7, 38:4-5). He also testified that he did not touch uneven ground under the water, and he did not know what his foot hit when he tripped. *Id.* at 38:6-10. However, Defendant TMS's attorney did not ask follow-up questions of Mr. Liss, including questions clarifying what, exactly, Mr. Liss meant when he said "uneven ground." This leaves open the possibility that Mr. Liss was referring to the physical ground beneath the slates covering the path under the catwalk, to the metal slates themselves, to some height difference between the two slates, or some combination therein. *See, e.g., Ground*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/ground (including in its relevant definitions of "ground": "soil, earth;" "the bottom of a body of water;" "a surrounding area;" and by reference to the word "substratum," "a material that serves as a[n underlying support or foundation]"). By way of example of the potential differing interpretations of Plaintiff's testimony, when asked by Defendant TMS's counsel about what Plaintiff meant when he testified that he tripped "in a hole," Plaintiff's expert witness, Mr. Chet Razor, explained Plaintiff *might* have meant a hole in the slates, but he could also have referred to the entire body of water

as a "hole." (Doc. 136, Exh. 3, 90:5-11). The Court cannot interpret Plaintiff's language on a motion for summary judgment; that interpretation must be left to a jury. That the Court is left to speculate as to what Plaintiff may have meant merely means that the deposition examination failed to resolve that question, rather than that Plaintiff himself was speculating. Mr. Smith also testified that smooth steel plates lie under the catwalk; though there are no grooves in the plates, there are "some pieces welded on top of them so the plates interconnect." (Doc. 136, Exh. 1, 25:16-26:3). Plaintiff's expert also admits that there are no joints or holes in the plate. (Doc. 136, Exh. 3, 89:4-12). No witnesses observed Plaintiff fall, and Plaintiff did not reach down to touch the ground beneath him after the incident. (Doc. 118, p. 9). However, pictures of the area do reveal a small "lip" between the dry area surrounding the catwalk and the area covered by water in which Plaintiff fell. *See* (Doc. 117, Exh. 15). Furthermore, by the description of pictures shown between counsel and Mr. Razor during Mr. Razor's deposition, the flat metal slates also had gravel and rock on top. (Doc. 136, Exh. 3, 89:4-12). This circumstantial evidence supports a reasonable conclusion corroborating Plaintiff's claim that he fell on "uneven ground."

During the hearing on the motion for summary judgment, Defendant TMS also mentioned that their expert witness, Dr. Levitan-DiDomenico, testified that the placement of Plaintiff's injuries indicated that he first hit his unprotected head on the catwalk, which caused him to fall and hit his leg. Dr. Levitan-DiDomenico's testimony, however, merely raises a competing theory of the causation of Plaintiff's injury; it does not foreclose Plaintiff's theory of causation as a possibility. To the extent that Dr. Levitan-

DiDomenico's testimony conflicts with the circumstantial evidence Plaintiff presents, it is the jury's obligation to resolve that conflict, rather than the Court's duty. Because Plaintiff offers a theory of proximate cause which is reasonably supported by the circumstantial evidence, the Court finds that summary judgment is not appropriate on this issue.

CONCLUSION

For the above-stated reasons, Defendant TMS's motion for summary judgment (Doc. 116) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  May 31, 2022.**

Digitally signed by
Judge Sison 2
Date: 2022.05.31
15:27:37 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**