UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN LISS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 3:19-cv-00810-GCS |
| TMS INTERNATIONAL, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

| | |
|---|---|
| TMS INTERNATIONAL, LLC, | ) |
| | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| SUPREME TRUCKING & | ) |
| EXCAVATING, LLC. | ) |
| | ) |
| Third-Party Defendant. | ) |

## **MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Now before the Court are motions *in limine* filed by Plaintiff Steven Liss, (Doc. 162, 164, 175); Defendant TMS International, LLC ("TMS"), (Doc. 168, 193); and Third-Party Defendant Supreme Trucking & Excavating, LLC ("Supreme"). (Doc. 150). On June 7, 2022, the Court held a hearing on the parties' motions *in limine*. However, the Court reserved ruling on the following motions: (i) **TMS's VI** seeking to bar mention of any future surgery or medical treatment for Plaintiff; (ii) **TMS's XI** seeking to bar undisclosed

medical treatment; (iii) **TMS's XXII** seeking to prohibit mention of Plaintiff's potential for further amputation; (iv) **TMS's XXV** seeking to prohibit mention of Plaintiff's medical bills; (v) **TMS's Supplemental I** seeking to bar mention of Plaintiff's Medicaid negotiated bills; (vi) **TMS's Supplemental II** seeking to prevent Plaintiff's medical provider, Dr. Revak, from testifying as an expert witness; (vii) **TMS's Supplemental III** seeking to prevent introduction of evidence that Plaintiff's injury is consistent with him twisting his leg; (ix) **TMS's Supplemental V** seeking to prevent testimony on who created Plaintiff's discharge summary; (x) **TMS's Supplemental VI** seeking to prevent Dr. Revak's testimony on the future risk to Plaintiff's knees; and, (xi) **TMS's Supplemental VII** seeking to prevent Mr. Razer from testifying on the state of the ground where Plaintiff was injured. *See* (Doc. 168 & 193).

In order to easily analyze similar motions relying upon the same law, the Court has grouped the outstanding motions *in limine* as follows: (i) TMS's VI, XI, XXII, and Supplemental VI as "medical treatment motions;" (ii) TMS's Supplemental II, III, V, and VII as "expert witness motions;" and (iii) TMS's XXV and Supplemental I as "medical billing motions." For the reasons delineated below, the medical treatment motions are **GRANTED in part and DENIED in part.** The expert witness motions are **DENIED.** And, finally, the medical billing motions are also **DENIED.**

ANALYSIS

I.  **The Medical Treatment Motions**

In its sixth motion *in limine*, TMS states that Plaintiff should be barred from suggesting to the jury that he will require future surgery or extensive medical treatment. (Doc. 168, p. 4). Likewise, in its twenty-second motion, TMS seeks to prevent Plaintiff from mentioning that he may need future amputation below his knee. *Id*. at p. 14. In its sixth supplemental motion *in limine*, TMS asks the Court to prohibit Plaintiff from discussing the potential for his injury to affect his knees. (Doc. 193, p. 8). Plaintiff would establish his need for future extensive medical treatment and the risk of his injury affecting his knees through the testimony of Dr. Revak, the orthopedist who treated him after his injury. (Doc. 196, Exh. B, p. 3). Similarly, Plaintiff would establish the potential for further amputation through the testimony of Dr. Wittgen, the vascular surgeon who treated him after his injury. *Id*. at p. 2.

TMS predicates these three motions *in limine* on the same two arguments: (i) neither Dr. Revak's nor Dr. Wittgen's testimony is based on a reasonable degree of medical certainty, and (ii) neither Dr. Revak nor Dr. Wittgen was properly disclosed as experts, as is necessary to introduce their testimony on this subject. *See, e.g.*, (Doc. 168, p. 14; Doc. 193, p. 8). However, both Dr. Revak's and Dr. Wittgen's testimonies are predicated on a sufficient degree of medical certainty. Moreover, both experts were properly disclosed as non-retained experts under Federal Rule of Civil Procedure 23(a)(2)(B).

As an initial matter, a plaintiff may be able to recover for all demonstrated injuries, including a future injury that is *not* estimated to occur with a reasonable degree of medical certainty. *See Dillon v. Evanston Hosp.*, 771 N.E.2d 357, 370 (Ill. 2002) (internal citations omitted). However, compensation for such future injuries should reflect the low probability of occurrence. *Id*. The solution "is not in denying recovery, but in letting the jury determine on a common sense basis the amount of damages which will reasonably compensate the plaintiff." *Id.* (quoting 2 G. Boston, STEIN ON PERSONAL INJURY DAMAGES § 9:16, at 9-30 through 9-31 (3d ed. 1997)) (internal quotations and marks omitted). TMS's proper remedy would then lie in "objecting to the excessiveness of the verdict . . . ." *Id*. (quoting 2 J. Nates, C. Kimball, D. Axelrod & R. Goldstein, DAMAGES IN TORT ACTIONS § 13.02, at 13-9 (2001)).

Indeed, Illinois courts have explicitly contemplated the likelihood that a witness would testify before a jury about a future injury not estimated to occur with a reasonable degree of medical certainty. Illinois Pattern Instructions 30.04.04 specifically instructs jurors to compute damages for increased risk of future harm by multiplying the total compensation to which the plaintiff would be entitled by the probability that the harm would occur. This instruction is *only* to be given if the probability of the harm at issue is *less than* fifty percent certain to occur. I.P.I. 30.04.04, Notes on Use (emphasis added). Even assuming, *arguendo*, that neither Dr. Revak nor Dr. Wittgen can offer a reasonable degree of medical certainty regarding the potential for Plaintiff's need for extensive medical treatment in the future, Plaintiff may still introduce this evidence during trial.

However, both Dr. Revak and Dr. Wittgen have predicated their estimations regarding Plaintiff's risk of future injury with a reasonable degree of medical certainty. The challenge of showing that future medical treatment is necessary with a "reasonable degree of medical certainty" is not a difficult one for Plaintiff to meet. Even when a medical witness testifies that the possibility of amputation or treatment is "less than one percent," this estimation nevertheless constitutes a reasonable degree of medical certainty. *Jeffers v. Weinger*, 477 N.E.2d 1270, 1275 (Ill. App. Ct. 1985). Regardless of the percentage number, whether between "a one percent possibility or a ninety-nine percent possibility, each is an element of damage which could be considered by the jury." In contrast, when the need for future treatment is predicated on which course of treatment a plaintiff would choose to follow, rather than a "possible consequence flowing from the negligence" at issue, there is insufficient certainty to introduce this evidence to a jury. *Diaz v. Legat Architects, Inc.*, 920 N.E.2d 582, 609 (Ill. App. Ct. 2009).

As Dr. Revak explained in his testimony, his estimation of Plaintiff's risk of future injury is predicated on how the amputations he has already had have altered his gait pattern. (Doc. 196, Exh. D, 29:15-22). This testimony demonstrates that the risk to Plaintiff's knees and his risk of requiring future treatment are a possible consequence flowing from his initial injury. Dr. Wittgen's testimony presents a closer call. Although she states that Plaintiff's choices, including compliance with his follow-ups and maintenance of his medications, decrease his likelihood of needing amputation, she also explained that there "is a percentage of people that long term wind up subsequently losing the foot at a later point in time." (Doc. 204, 23:2-15). The latter statement indicates

that there is at least some risk that Plaintiff will undergo amputation due to the negligence at issue, despite any treatment choice he makes. Accordingly, Dr. Wittgen's testimony is also based on a reasonable degree of medical certainty, and both Dr. Wittgen's and Dr. Revak's testimony should be permitted to go before the jury.

The Court further finds that both Dr. Revak and Dr. Wittgen were properly disclosed as non-retained experts, as discussed in more detail in the following section. Therefore, TMS's motions *in limine* VI, XXII, and Supplemental VI, are **DENIED.**

TMS further requests in its eleventh motion *in limine* that Plaintiff be prohibited from introducing previously undisclosed medical treatment. As this motion is based on the presumptive failure to disclose the treatment, it is **GRANTED.**

## II.     The Expert Witness Motions

In addition to discussing whether Dr. Revak and Dr. Wittgen are improperly-disclosed expert witnesses in the second half of its medical treatment motions, TMS also asserted four motions *in limine* pertaining to Plaintiff's disclosure of potential expert witnesses. In Supplemental II, TMS argues that Dr. Revak must be barred from testifying about procedures performed on Plaintiff about which he has no personal knowledge because Plaintiff failed to properly disclose Dr. Revak as an expert. (Doc. 193, p. 3-4). For the same reason, in Supplemental V, TMS asserts that Dr. Revak must be prohibited from testifying as to who wrote Plaintiff's discharge summary, as the summary was completed outside of his presence. *Id.* at p. 8. In Supplemental VII, TMS claims that Plaintiff's expert witness, Mr. Razer, may not testify as to the nature or condition of the ground where

Plaintiff fell because his opinions on this issue were not properly disclosed. *Id.* at p. 10. Finally, TMS also asserted the broader Supplemental III, in which TMS alleges that Plaintiff may not introduce testimony as to the causation of his injuries, including that his injury is consistent with twisting his leg, because he did not disclose an expert who would so testify. *Id.* at p. 7.

The standards Plaintiff must meet for the disclosure of his non-retained expert witnesses (Dr. Revak and Dr. Wittgen) and his retained expert witness (Mr. Razer) differ significantly. When disclosing a retained expert witness pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), a party must provide the opposing side with an expert report including: (i) a complete statement of the witnesses' opinions and the reasons therefore, (ii) the facts or data the witness considered when forming those opinions, (iii) the exhibits used to summarize them, (iv) the witnesses' qualifications, (v) a list of all other cases in which the witness testified as an expert in the past four years, and (vi) a statement of compensation to be paid for the study and case testimony. TMS asserts that Mr. Razer was not disclosed according to this standard. (Doc. 193, p. 10).

TMS specifically argues that Plaintiff only disclosed Mr. Razer's opinions regarding alleged OSHA violations, rather than any opinions pertaining to the conditions of the ground where Plaintiff was injured. However, Plaintiff did disclose a report from Mr. Razer containing his opinions and the reasons therefore pursuant to Rule 26(a)(2)(B)(i). In that report, at paragraph C, Mr. Razer states that "TMS'[s] failure to prevent the collection of storm water on and over a known and accepted walkway, and

the failure to designate and clearly mark an alternative walkway that avoided the hazard was an unsafe practice." (Doc. 196, Exh. E, p. 2). This paragraph explicitly notes that Mr. Razer would opine that TMS contributed to the conditions on the ground at the time Plaintiff suffered his injury. The reference to TMS's alleged failure to prevent the collection of the storm water on a walkway specifically alerts TMS of Mr. Razer's opinion that TMS could have taken some action to prevent the collection of storm water, and accordingly, the conditions of the ground where Plaintiff suffered his injury. Mr. Razer's opinion was therefore properly disclosed pursuant to Rule 26(a)(2)(B).

TMS's next argument regarding Mr. Razer is that his method of analysis is too speculative to be admissible because Mr. Razer did not personally visit the site of the injury. (Doc. 193, p. 11). According to TMS, this evidence is neither reliable nor helpful to a jury. *Id*. In making this argument, TMS relies on cases operating under the standards outlined in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See id.* (citing *Schur v. L.A. Weight Loss Centers, Inc.*, No. 05-CV-353-WDS, 2007 WL 9724596, at *1 (S.D. Ill. Oct. 17, 2017), overruled, 577 F.3d 752 (7th Cir. 2009) for its application of *Daubert*). However, as the Court has previously stated, its case management procedures stipulate that all motions to exclude or limit expert testimony pursuant to *Daubert* must be submitted by the deadline for summary judgment motions, rather than the deadlines for motions *in limine*. Accordingly, this argument is denied as untimely, and as such, the Court denies TMS's motion *in limine* Supplemental VII.

In contrast, Plaintiff disclosed Dr. Revak and Dr. Wittgen as non-retained experts under Federal Rule of Civil Procedure 26(a)(2)(C). (Doc. 196, Exh. B). These witnesses are

not required to provide a written report; to the contrary, the party offering the witness need only disclose: (i) the subject matter on which the witness will present evidence, pursuant to Federal Rules of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify. The cited federal rules of evidence outline what an expert may testify about. TMS first argues that Plaintiff was required to provide them with a written report for Dr. Revak and Dr. Wittgen pursuant to Rule 26(a)(2)(B). However, "only those witnesses '*retained or specially employed to provide expert testimony*' must submit an expert report complying with Rule 26(a)(2)(B)." *Musser v. Gentiva Health Services*, 356 F.3d 751, 756-757 (7th Cir. 2004) (emphasis in original). The commentary to Rule 26 explicitly considers the circumstances of this case: a "treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report." FED. R. CIV. PROC. 26, cmt. 1993 Amendments, subdivision (a), para. (2). As non-retained experts, Dr. Revak and Dr. Wittgen are permitted to testify about their opinions as to causation, prognosis, and diagnosis without providing an expert report under Rule 26(a)(2)(B). *See Schmelzer v. Muncy*, Cause No. 3:16-CV-00290-GCS, 2019 WL 3842335, at *3 (S.D. Ill. Aug. 14, 2019). *See also Martin v. CSX Transp., Inc.*, 215 F.R.D. 554, 557 n.3 (S.D. Ind. 2003)(permitting the introduction of a treating physician's opinions regarding causation and prognosis); *McCloughan v. City of Springfield*, 208 F.R.D. 236, 242 (C.D. Ill. 2002)(finding that treating physicians may offer testimony on causation, diagnosis, and prognosis without the prerequisite of providing a Rule 26(a)(2)(B) report).

The fact that Plaintiff designated Dr. Revak and Dr. Wittgen as non-retained experts does not fully extinguish his responsibility to formally disclose them as expert witnesses. *See Schmezler*, 2019 WL 3842335, at *2. To the contrary, Plaintiff must still provide TMS with the subject matter on which both witnesses are expected to testify, and a summary of those facts and opinions. *Id*. Typical disclosures of physicians as non-retained experts include a note that the witness provided care and treatment, had knowledge of the nature and extent of the injuries and the nature of the treatment provided, and the reasonableness and necessity of such treatment. *Id*. To the extent that Plaintiff expected Dr. Revak and Dr. Wittgen to discuss causation, prognosis, or diagnosis, this would also need to be disclosed. However, Plaintiff met this standard by explicitly stating that Dr. Wittgen and Dr. Revak were expected to testify as to "diagnoses; causation; prognosis; nature, extent, and duration of the injury; past and future pain and suffering; past and future disability, necessity of medical treatment, past and future; and reasonableness and necessity of medical expenses." (Doc. 196, Exh. B, p. 2-3). Through this disclosure, Plaintiff sufficiently alerted TMS to Dr. Revak's and Dr. Wittgen's testimony as non-retained experts, including potential testimony about the procedures constituting the medical chart the physicians would have reviewed in their treatment of Plaintiff (diagnoses and causation), Plaintiff's discharge summary (diagnoses and prognosis, as well as the extent, nature and duration of his injury), that Plaintiff's injury is consistent with twisting his leg (diagnoses and causation), and Plaintiff's risk of future treatment or further injury (prognosis, and past and future pain and suffering or disability).

Finally, even if Plaintiff failed to properly disclose Dr. Revak or Dr. Wittgen, the failure is harmless. When considering sanctions for the failure to disclose an expert witness, the Court turns to Federal Rule of Civil Procedure 37(c)(1). Under Rule 37(c)(1), if the failure to disclose is substantially justified or harmless, sanctions are not required. The Seventh Circuit explained in *Westefer v. Snyder*, that a district court:

> need not make explicit findings regarding a justification or the harmlessness of the Rule 26 violation, but . . . the following factors should guide the district court's discretion: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date.

422 F.3d 570, 585 n.21 (7th Cir. 2005)(citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).

First, disclosure of Dr. Revak's and Dr. Wittgen's testimony is unlikely to surprise TMS. Even if Dr. Revak and Dr. Wittgen were not properly disclosed, TMS specifically inquired into their knowledge of and opinions regarding Plaintiff's medical procedures in which they did not participate. (Doc. 194, p. 4-5). In *Musser v. Gentiva Health Services*, 356 F.3d 751 (7th Cir. 2004), the Seventh Circuit rejected the opposing party's ability to depose an improperly disclosed witness as curative because the opposing party could not properly prepare for deposition. *Id.* at 757. Here, however, unlike *Musser*, TMS was prepared to and did inquire into those opinions which transcended the physicians' personal knowledge, thus indicating very little, if any, prejudice to TMS. As Plaintiff properly disclosed the physicians pursuant to Rule 26(a)(2)(C), and as, even if the

physicians were not properly disclosed, there is little to no prejudice from the improper disclosure, TMS's motions *in limine* Supplemental II, III, and V are denied.

### III. The Medical Billing Motions

The remaining outstanding motions *in limine* are TMS's XXV and TMS's Supplemental I. (Doc. 168, p. 17; Doc. 193, p. 2). In the twenty-fifth motion, TMS asserts that the Court must prevent Plaintiff from introducing evidence of his medical bills because the bills lack the proper foundation showing that the costs and expenses were both reasonable and necessary. (Doc. 168, p. 17). Similarly, in Supplemental I, TMS states that Plaintiff's medical bills for his intramedullary nail for his right tibia, open reduction internal fixation for his fibula, fasciotomies performed for compartment syndrome, and vascular exploration or angiogram must be barred for lack of foundation. (Doc. 193, p. 2). Plaintiff wants to introduce his initial medical bills, though his bills were eventually paid at a reduced rate through Medicaid. (Doc. 196, p. 1).

These motions *in limine* present a set of dual issues to the Court: (i) whether Plaintiff has laid a sufficient foundation to introduce evidence of his medical bills *at all*, and (ii) whether Plaintiff can introduce his initial bill, rather than the negotiated bill Medicaid eventually paid. Illinois courts deploy a three-factor test for determining the admissibility of evidence of medical expenses: (i) the plaintiff must show they have paid or have become liable to pay a medical bill, (ii) the plaintiff must demonstrate that they necessarily incurred the expenses because of the injuries at issue, and (iii) the plaintiff must illustrate that the charges were "reasonable for services of that nature." *Arthur v.*

*Catour*, 833 N.E.2d 847, 853 (Ill. 2005) (internal citations omitted). The parties here dispute only the third prong of the admissibility test. Specifically, TMS asserts that Plaintiff must introduce expert testimony as to the reasonableness of the bills.

The Illinois Supreme Court has explicitly held that when "evidence is admitted, through testimony or otherwise, that a medical bill was for treatment rendered and that ***the bill has been paid***, the bill is *prima facie* reasonable." *Arthur*, 833 N.E.2d at 853 (citing *Flynn v. Cusentino*, 375 N.E.2d 433, 436 (Ill. 1978)) (emphasis added). It is only when "the plaintiff seeks to admit a bill ***that has not been paid in whole or in part***" that the plaintiff "must establish reasonableness by other means[.]" *Wills v. Foster*, 892 N.E.2d 1018, 1025 (Ill. 2008) (emphasis added). This is typically done through "the testimony of someone having knowledge of the services rendered and the reasonable and customary charge for such services." *Id.* TMS's arguments to the contrary therefore contravene settled Illinois law.

The *prima facie* reasonableness of a paid medical bill extends to cases in which a third party paid a reduced bill on a plaintiff's behalf, such as a private insurer. *See, e.g.*, *Wills*, 892 N.E.2d at 1024 (explaining the Illinois Supreme Court's holding in *Arthur v. Catour*, 833 N.E.2d 847 (Ill. 2005), which concluded that the plaintiff was entitled to submit full amount of charged medical bills, as opposed to reduced amount paid by the insurer). In Illinois, the "collateral source rule" stipulates that "benefits received by the injured party from a source wholly independent of, and collateral to, the tortfeasor will not diminish damages otherwise recoverable from the tortfeasor." *Id.* at 1022 (citing *Arthur*,

833 N.E.2d at 853). This rule includes both evidentiary and substantive elements; as a rule of evidence, it prevents the jury from learning about collateral income, including, for example, that all or part of a plaintiff's losses were covered by insurance. *Id*. at 1023. The Illinois Supreme Court in *Wills* extended this concept to Medicare and Medicaid because it was an arrangement between the plaintiff and "the government that allows the plaintiff's medical expenses to be paid because of factors such as [] age or income level." *Id.* at 1030. Accordingly, Plaintiff may introduce the full amount of his paid medical bills, including those for which Medicaid paid a negotiated lower amount, as the payment of those bills are *prima facie* evidence of their reasonableness sufficient to establish a foundation for the evidence. Accordingly, TMS's motions *in limine* XXV and Supplemental I are **DENIED.**

## Conclusion

For the above-stated reasons, the following motions *in limine* are **GRANTED:** **TMS's XI** seeking to bar undisclosed medical treatment. The following motions *in limine* are **DENIED:** (i) **TMS's VI** seeking to bar mention of any future surgery or medical treatment for Plaintiff; (ii) **TMS's XXII** seeking to prohibit mention of Plaintiff's potential for further amputation; (iii) **TMS's XXV** seeking to prohibit mention of Plaintiff's medical bills; (iv) **TMS's Supplemental I** seeking to bar mention of Plaintiff's Medicaid negotiated bills; (v) **TMS's Supplemental II** seeking to prevent Plaintiff's medical provider, Dr. Revak, from testifying as an expert witness; (vi) **TMS's Supplemental III** seeking to prevent introduction of evidence that Plaintiff's injury is consistent with him

twisting his leg; (vii) **TMS's Supplemental V** seeking to prevent testimony on who created Plaintiff's discharge summary; (viii) **TMS's Supplemental VI** seeking to prevent Dr. Revak's testimony on the future risk to Plaintiff's knees; and, (ix) **TMS's Supplemental VII** seeking to prevent Mr. Razer from testifying on the state of the ground where Plaintiff was injured.

**IT IS SO ORDERED.**

**DATED:  June 17, 2022.**

Digitally signed by Judge Sison 2
Date: 2022.06.17 14:00:26 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**